IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24-CR-77 |
| | : | |
| v. | : | MAGISTRATE NO. 23-MJ-264 |
| | : | |
| JOHN ANTHONY SCHUBERT JR., | : | 18 U.S.C. § 111(a)(1) |
| also known as "John Anthony Schubert III" | : | (Assaulting, Resisting, or Impeding Certain Officers) |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, John Anthony Schubert Jr., also known as John Anthony Schubert III, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 pm. Shortly thereafter, by approximately 1:30 pm, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 pm, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 pm, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 pm, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 pm, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 pm on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 pm after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

1. On January 6, 2021, before 1:00 pm, the defendant joined a large crowd that gathered near the Peace Monument, located in the roundabout at Pennsylvania Avenue and 1st Street NW, an area known at the "Peace Circle" in Washington, D.C. The area was blocked by fencing and closed to the public on January 6, 2021. At approximately 12:50 pm a rioter opened a section of metal fencing barricades at the exterior perimeter of the Capitol grounds and walked towards a line of officers positioned behind a second row of metal fencing barricades on

Pennsylvania Walkway. The crowd of rioters, including the defendant, walked up Pennsylvania walkway. This marked the first breach of the restricted Capitol perimeter on January 6, 2021.

2. The second line of barricades included metal bike-rack fencing linked together and wrapped with netting. The barriers held large, white signs that read "Area Closed" in bold, red letters. Uniformed USCP officers stood behind the second line of barricades and prohibited entry.

3. The defendant wore a red visor and a blue long sleeve shirt with the words "Wrigley Field" on it. The defendant approached the metal fencing barricades and briefly, but forcibly, pulled and pushed the metal fencing barricades.

4. After the defendant and other rioters overwhelmed the USCP officers, the defendant continued to storm onto the Capitol grounds traveling up the Pennsylvania Walkway and onto the West Plaza. While on the West Plaza, the defendant joined with a large group of rioters fighting against a heavily outnumbered group of USCP officers struggling to prevent rioters from encroaching further toward the Capitol building. The rioters fought with the USCP officers, and during the fighting the defendant put his left shoulder and arm on a USCP officer and used his body weight to push that officer. The defendant also attempted to punch the USCP officer. The defendant retreated from the fighting when he was sprayed with a chemical irritant.

5. The defendant made his way to the Upper West Terrace and, at approximately 2:21 pm, the defendant entered the Capitol building by climbing through a broken window next to the Senate Wing Door. After entering, the defendant helped his parents climb through the broken window. The defendant, accompanied by his parents, went to various locations inside the Capitol, including the Rotunda and Statuary Hall. The defendant exited the Capitol at approximately 2:43 pm though the East Front House Door.

### *Elements of the Offense*

6. The parties agree that assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a), requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the United States Capitol Police.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of their official duties.

   e. Fifth, the defendant made physical contact with that officer, and acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense of civil disorder, 18 U.S.C. § 231.

### *Defendant's Acknowledgments*

7. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a USCP Officer while that person was engaged in and on account of their official duties. The defendant admits that he made physical contact with that officer and intended to commit civil disorder, in violation of 18 U.S.C. § 231.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    s/ *Anna Z. Krasinski*
        ANNA Z. KRASINSKI
        Assistant United States Attorney
        New Hampshire Bar No. 276778
        United States Attorney's Office
        Detailed from the District of New Hampshire
        (202) 809-2058
        anna.krasinski@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, John Anthony Schubert Jr., also known as John Anthony Schubert III, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/31/24

John Anthony Schubert Jr.,
also known as John Anthony Schubert III
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/31/24

William Shipley
Attorney for Defendant